CHESTER A. STARK, d/b/a CHESTER A. STARK & ASSOCIATES, Plaintiff-Appellant, Cross-Appellee, v. RALPH F. ROUSSEY & ASSOCIATES, INC. et al., Defendants-Appellees, Cross-Appellants.

(No. 60189;

First District (4th Division)—January 22, 1975.

James A. Regas, of Chicago, for appellants.

Philip Conley, of Naperville, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a decree entered by the Circuit Court of Cook County. The decree allowed the plaintiff to foreclose its mechanic's lien upon certain real estate owned by the defendant corporation. In addition, the decree assessed plaintiff's damages on a *quantum meruit* basis and assessed costs equally between the parties. The plaintiff now appeals from that portion of the decree assessing damages on a *quantum meruit* basis rather than basing damages on the written contract existing between the parties. The defendant cross-appeals from the decree foreclosing the mechanic's lien.

The issues presented on appeal are (1) whether the findings of the master in chancery, which were approved by the trial court, were supported by a preponderance of the evidence; and (2) whether the trial court, having approved the findings of the master, committed error in allowing recovery on a *quantum meruit* basis rather than as provided in the existing contract and assessing costs equally between the parties.

On November 1, 1962, the plaintiff, Chester A. Stark, an architect, entered into a written contract with the defendant Ralph F. Roussey, president of the defendant corporation, Ralph F. Roussey & Associates, Inc., for the purpose of constructing a business and apartment building. By the terms of the contract plaintiff agreed to render architectural services, and defendant, as owner of the real estate in question, agreed to pay plaintiff for his services a basic fee of 6% of the cost of the work in said contract. Defendant paid plaintiff a retainer fee of $1,000 and plaintiff was to receive $5,000 when the plans were ready for permit, said $5,000 becoming part of the 6% fee should the construction continue after that point. Plaintiff's services as architect under the contract were to be divided into three phases, to wit:

(a) "Phase A"—preliminary services
(b) "Phase B"—construction document services
(c) "Phase C"—construction supervision services

The contract also provided that at any time after the defendant approved the preliminary plans, should he require the plaintiff to make any substantial change in the work, the plaintiff would be reimbursed by the defendant the cost of the additional expenses incurred. Pursuant to the contract, the plaintiff completed "Phase A" of the project and an approval of his services was obtained from defendant Roussey, acting for and in behalf of the defendant corporation.

On December 27, 1962, defendant Roussey in his representative capac-

ity authorized the plaintiff to complete working drawings and specifications, which were part of "Phase B" of plaintiff's services. While plaintiff was completing the final working drawings and specifications, defendant Roussey made substantial changes in the project, requiring revisions of plans, design and specifications, as well as additional working drawings. Such additional work required approximately 200 hours of service by the plaintiff and necessitated plaintiff's employing a structural engineer and an electrical engineer at a total cost of $1,042.50.

In April, 1963, the defendant corporation, through defendant Roussey, authorized and directed the plaintiff to procure bids from subcontractors. Approximately 3 months were required to procure between 150 and 200 bids, all of which were analyzed, tabulated and compiled by plaintiff into work sheets for the purpose of arriving at an overall price for the project. The total cost of the project shown by tabulation of the bids was $797,874.91. After the plaintiff advised defendant Roussey as to the cost of the building, Roussey stated he would not apply for a permit and would not build at such a price, thereby terminating plaintiff's services.

On December 5, 1963, plaintiff filed a complaint to foreclose his claim for a mechanic's lien on the real estate owned by the defendant corporation. The case was referred to a master in chancery, who recommended that a mechanic's lien be allowed in favor of the plaintiff in the sum of $33,404.30, with interest. The master further recommended that fees and costs be assessed against the defendant corporation in the sum of $3,210. At trial, the court sustained all the findings of fact contained in the master's report, but overruled the master's findings as to damages. The trial court entered judgment for $4,000 on a *quantum meruit* basis. Subsequently, the decree was reversed and remanded for reassignment by the appellate court on the ground that the defendant was entitled to a change of venue prior to the hearing before the court. The matter was then assigned to a new trial judge for further proceedings. At the close of the hearings, the trial court entered the same decree of $4,000 in favor of the plaintiff on a *quantum meruit* basis. The plaintiff appeals from that portion of the decree assessing damages on a *quantum meruit* basis rather than on the written contract and assessing costs equally between the parties. Defendant cross-appeals from the decree foreclosing the mechanic's lien.

The plaintiff first contends the findings of the master in chancery, which were approved by the trial court, were supported by a preponderance of the evidence.

■■ We agree with the plaintiff's contention. A review of the record indicates the report of the master was detailed and accurate, and uncontradicted by any evidence presented by the defendant. The rule is well

established that a master's findings of fact, when approved by the chancellor, as here, will not be disturbed unless manifestly against the weight of the evidence. (*Schmitt v. Heinz*, (1955) 5 Ill.2d 372.) The findings of the master in the case at bar, approved by the chancellor, were clearly supported by a preponderance of the evidence and will not be disturbed by this court.

The plaintiff also contends the trial court, having approved the findings of fact of the master, committed error in allowing recovery on a *quantum meruit* basis rather than as provided in the existing contract and assessing costs equally between the parties.

■■■ We believe the trial court should have based plaintiff's recovery as provided in the existing contract and not on a *quantum meruit* basis. It is well established that the terms of the contract under which an architect is employed govern with respect to his compensation. (*Espert v. Ahlschlager* (1905), 117 Ill.App. 484.) In *Michalowski v. Richter Spring Corp.* (1969), 112 Ill.App.2d 451, the appellate court was faced with the question of determining what meaning should be given to the term "construction cost" in an agreement between the plaintiff-architect and the defendant-owner. Defendant contended that under the terms of the contract it agreed to pay plaintiff 6% of the construction cost of the project, and since the project was abandoned after bids had been received, the project cost nothing and plaintiff was not entitled to any payment. The appellate court held that was not a reasonable construction of the contract. The court stated that since plaintiff had performed his part of the contract, "it is reasonable to infer that the parties intended 'construction cost' to mean the amount that construction of the project would cost as determined by the bid and defendant was not at liberty to escape liability by changing its intention to build." Likewise, in the present case, the performance to be rendered by the plaintiff was stipulated in the written contract existing between the parties, along with the manner in which defendant was to pay plaintiff for his services. The trial court erred in allowing recovery on a *quantum meruit* basis rather than on the contract. Further, the master's fees and costs should have been charged against the defendant.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is reversed and the cause is remanded with directions to enter judgment as herein stated. The cross-appeal is dismissed.

Reversed and remanded with directions; Cross-appeal dismissed.

BURMAN and JOHNSON, JJ., concur.